## PEOPLE *v.* HILL.

SECTION 192 OF THE CRIMINAL PRACTICE ACT CONSTRUED. — The second subdivision of section 192 of the criminal practice act should be read as though the reference therein were to section 151 instead of section 152.

DEMURRER TO INDICTMENT, SPECIFICATION OF GROUNDS OF.—A demurrer to an indictment, on the ground that it "does not substantially conform to the requirements of sections 150 and 151 of the code of procedure in criminal cases as to the offense charged and the particular circumstances," sufficiently specifies the grounds of demurrer within the meaning of section 193 of the criminal practice act, to entitle the defendant to be heard thereon.

AN INDICTMENT, FRAMED IN THE LANGUAGE OF THE STATUTE, CHARGING THE EMBEZZLEMENT OF PROPERTY INTRUSTED TO THE DEFENDANT "AS BAILEE," without setting forth the facts and circumstances of the bailment, is sufficient.

AN INDICTMENT WHICH CHARGES SEVERAL ACTS, ANY ONE OF WHICH WOULD CONSTITUTE AN OFFENSE, but which, as pleaded, are parts of one and the same matter, and taken together constitute an entire transaction, resulting in the commission of a crime, charges but one offense.

NEITHER AN ORDER OF RESUBMISSION AFTER DEMURRER TO INDICTMENT SUSTAINED, NOR AN ORDER REFUSING TO DISCHARGE a defendant pending investigation by the grand jury to which the charge is thus resubmitted, is appealable.

SECTION 196 OF THE CRIMINAL PRACTICE ACT CONSTRUED.—The words "next succeeding grand jury," in section 196 of the criminal practice act, providing that after demurrer to an indictment is allowed the court may resubmit the cause "to the same or to the next succeeding grand jury," refer back to the time when the judgment on the demurrer is made and entered, and the meaning is that if the order of resubmission is made, it must be to the first grand jury that meets after the demurrer is allowed.

IN THIS CASE THE JUDGMENT OF THE COURT BELOW SUSTAINING THE DEMURRER WAS REVERSED AND THE CAUSE REMANDED, with instructions to that court to overrule the demurrer and allow the defendant to plead to the indictment.

APPEALS from the third district court. The people appealed from the judgment sustaining a demurrer to the indictment;

the defendant appealed from an order resubmitting the cause
to the grand jury which should be next impaneled after the
judgment on the demurrer, and from an order holding the
defendant in custody to abide the action of such grand jury.
Subsequent to the finding of the indictment, and prior to the
judgment on the demurrer being entered, a grand jury im-
paneled for the third district had convened and been dis-
charged. The opinion states the other facts.

*E. T. Sprague, assistant U. S. attorney, Zera Snow, assistant
U. S. attorney,* and *Arthur Brown,* for the people.

This is an appeal by the people from an order of the third
district court sustaining a demurrer to the indictment, and
is taken under the criminal practice act of 1878: Crim. Prac.
Act, 1878, sec. 361; *People* v. *Ah Owen,* 39 Cal. 604; 47 Id.
112.

On this appeal it is very desirable on the part of the peo-
ple that it be settled whether: 1. Non-conformity to section
151 is cause of demurrer. Admitting that the legislature
may have intended 151 where it has said 152, in subdivision
2 of section 192, does such intention, unexpressed, become
effectual? 2. Whether this demurrer contains specifications
to the indictment so as to entitle it to be considered at all
under section 193. An answer in 'the negative to either of
the above queries involves reversal of the judgment on the
demurrer.

The first ground of demurrer (in substance, for ambiguity
and uncertainty) is based upon subdivision 2, section 192; the
section referred to therein (152) in no way prescribes the
form or substance of an indictment, though section 151 does.
But an indictment which fails to meet the requirements of
section 151 is not demurrable, for the reason that the statute,
section 193, has failed by its very terms to make that a sub-
ject of demurrer.

But this ground of demurrer is not well taken, for the rea-
son that it fails to point out in what respect the indictment
does not comply with the sections named. It is in substance
a demurrer that the indictment "is ambiguous, uncertain, and
unintelligible;" and this uncertainty must be pointed out in

the demurrer—not in argument merely—or it must be disregarded. In civil cases, this is the rule without a statute; in criminal cases, the statute requires it. See Prac. Act, 1878, sec. 193; and see *Lopez, Adm'x,* v. *Central Arizona Mining Co.,* 1 West Coast Rep. 41, where the rule is carried further than we would admit; *People* v. *Ah Sam,* 7 Nev. 127.

Any other rule would enable a defendant to assign, in argument, to the lower court one ground of uncertainty, and on an appeal another and different one, thus raising in an appellate court objections not first taken below, and upon which the lower court had no opportunity to pass.

But we submit the indictment is definite and certain, and contains the "particular circumstances" of the offense, unless it is a rule of pleading that evidenciary facts, and not ultimate facts, must be pleaded.

If to enable the court to pronounce judgment (sec. 158), or the defendant to answer the indictment (sec. 150), it is meant that a defendant is entitled to be advised of all the evidence of the prosecution, the indictment may be insufficient.

If the court below and counsel were asked if the indictment stated a public offense, the answer unquestionably would be that it did (it is not demurred to because it does not state a public offense; on the contrary, one of the objections is that it states too many offenses), and that that offense was embezzlement. If now the indictment states all the facts that the evidence of the prosecution admits of, then we take it the order of the court below will not be affirmed, because the indictment fails to state "particular circumstances," which might have been, but which owing to the scarcity of facts were not connected with the transaction.

We invoke as the broadest rule of pleading (and the one most favorable to defendant), that if an indictment states the particular circumstances of an offense so fully and clearly that the defendant and the court can understand the charge made, it is in that regard sufficient.

Taking sections 150, 151, and 158, and studying them together, and this rule includes all that is required by them.

"Particular circumstances" are words which, literally accepted, are without defined limits. They involve unnum-

bered relations of persons and things, of time, quality, space, and character, some intimately blended in the transaction itself, others so remote as to be imperceptible, and still others of every intermediate degree. The words require construction and limitation, and the above we submit is a proper one. The charge of embezzlement of one from another involves a confidential relationship which, if it exists, carries with it its own "particular circumstances" of which a defendant knows.

The prosecution has attempted to set out in the indictment that defendant, on the eighth of March, 1883, having been theretofore intrusted by Lucy J. Hill with certificates of deposit, her property, collected the amount thereof, nine thousand dollars, of the bank, with the consent of the owner and the bank, for the purpose of conveying the money from the bank to the said owner, and defendant having so received the money, defendant fraudulently appropriated it to his own use..

Nothing more or less than one sending his check to a bank for collection by another person, the money to be returned at once to the sender, and instead of so returning the money collected the collector appropriates it to his own use.

Can there be any doubt that this constitutes the offense of embezzlement? Call the relationship what you please—that of collector, agent, servant, attorney, bailee; and misname that relationship if you please, the fact there pleaded carries its own legal import and draws after it its own legal consequences. Suppose no other relationship existed between the parties than that implied in the law by the business done, and what allegations in addition to above are needed? Other relationships are not implied on demurrer.

The indictment at bar charges only embezzlement of money. The attempt to make it charge embezzlement of certificates comes from defendant's counsel. The indictment itself negatives that, for it shows that the certificates were not embezzled, but were surrendered on payment. This is the just and legal inference. Therefore, the use of the word "same" instead of "said money" in the clause alleging conversion must refer to the money; or if by a strained construction we are going to make it include the "certificates," it does not create uncertainty, for it is the allegation merely of an im--

possibility, charging a *non sequitur*, the allegation of a conclusion merely which the fact pleaded negatives, and is at most a surplusage. In the indictment, then, looked at as charging embezzlement of money and not certificates, is there anything lacking under the strictest rule invoked by counsel?

If the fact in relation to the certificates as pleaded be treated as surplusage (is it not, though, one of the "particular circumstances," showing how and what money defendant received?), can that render the indictment uncertain? An immaterial allegation will never be held to vitiate a material one: *People* v. *Lee Hung*, 1 West Coast Rep. 45; 2 . Id. 137. Suppose after the word "thereof" in the last clause the words "and one horse" had been added, so that the allegation would have included among the property converted a horse which had not been before referred to, would the addition have rendered the indictment liable to demurrer?

But suppose the indictment were silent as to the certificates, would we not be at liberty to prove defendant's possession of certificates as a part of the circumstances attending the receipt of the money—one of the material ingredients of the crime? and if we may prove a fact, may we not allege it?

But let us examine in detail the objections taken by defendant's counsel in the court below.

It is said the indictment should so describe the offense as to show under which particular section of the chapter on embezzlement the prosecution is brought.

This is assumed, and not supported by any authority, and, as we claim, has no foundation, because it serves no useful purpose, and is impracticable of application. The rule aids neither court nor defendant in determining that the offense of embezzlement is charged. If the indictment states a public offense of embezzlement—and this is conceded—it must come under one or more of the sections. The rule invoked in no way aids in determining punishment, for that depends entirely upon the value of the property embezzled.

A single offense might come within each or all of the sections. For example, an agent or clerk of an express company who converts to his own use property in his possession and being transported for hire. A cashier of a corporate bank

may also be at the same time its agent, its attorney, and while having in his custody money to carry to a correspondent, embezzle the money. An agent may be a servant, and a bailee both agent and servant. In either of these cases, might not an offense be charged so as to bring it within any or all of the sections on embezzlement? and because of this hydra-headed relationship, is the offense any the less certain that it is embezzlement ? Indeed, the greater the degree of particularity with which the offense is charged, the more clearly appears the fact that the offense comes within all of the different sections.

Defendant's counsel says: "'Bailee' is a generic term, and the indictment should show the character or species of bailee referred to. The indictment does show this. But we also say the statute does not discriminate, but includes all classes. Defendant says a bailee may be a trustee, carrier, clerk, agent, banker, etc., and the indictment should show which sort of bailee he is. We reply, there are as many classes and kinds of trustees, carriers, etc., as bailees; and had we charged that defendant, as bailee, to wit, carrier, embezzled, etc., we would hear counsel inquire, "What kind of a carrier ?" etc.

It would seem to us that in this finical criticism there is no principle at stake. The principle or true rule, if any, upon this point is, that enough shall be stated as will give the court and defendant information as to what is to be understood, and as will bar a second charge.

Again, defendant says : " Baileeship is a legal conclusion, not a fact ; therefore its use is bad pleading."

By the same rule, agency, clerk, carrier, servant, attorney, the allegation of corporate existence, and every other term describing the character of the person charged, involves a legal conclusion instead of a fact. Bailee is the more definite.

To describe a person or charge an offense in the language of the statute defining the offense is sufficient: *People* v. *Flores*, 2 West Coast Rep. 137.

But if the argument of defendant's counsel were sound on this point, it has no application to the case at bar, because the character of the baileeship of the money is set out in the indictment, to wit, to carry and convey the money from the bank to Mrs. Hill in Salt Lake county. What more specific

description, then, could be given of the character of the bailee-ship? *People* v. *Flores,* 2 West Coast Rep. 137.

Defendant also claims that the joint act of bailment by the bank and Mrs. Hill, as charged, creates an uncertainty; but an uncertainty as to what, counsel fails to state.

The bank was a party to the delivery of the money (this is one of the particular circumstances of the receipt of the money—it came from Deseret Bank, and not Wells, Fargo & Co.); Mrs. Hill to the delivery and the agreement, and trust under which the delivery was made; and thereby both were properly alleged to have united in the act of bailment. Does the fact that the bank paid over the money, and assented (whether it had a legal right to assent or dissent) to the custody of defendant for the purpose for which the money was delivered, lessen the certainty of defendant's guilt—the other facts being proven? If not, how can the appearance of this fact in the pleading lessen the certainty of the charge of that guilt?

Counsel claims that fraud is the gist of the offense of embezzlement, and the facts constituting fraud should be pleaded. Fraud is not, however, the gist of the offense, and enters into it only as fraud enters into all wrong. The gist of the offense is the wrongful conversion of the property of another, and is a species of larceny differing from it only in that in embezzlement a relationship (confidential) of some kind exists between the parties out of which has grown an original taking which is lawful. It is only where the term "fraud" is used as a substantial equivalent to chicanery, swindling, or deception, that the rule of pleading invoked by counsel obtains.

The second ground of demurrer is that two offenses are charged, but the demurrer fails to state what two offenses are so united, and for this reason should be disregarded: Prac. Act, sec. 193; *People* v. *Ah Sam,* 7 Nev. 127.

The indictment, however, we submit, charges but one offense; viz., the embezzlement of money. The allegation that defendant held the certificates and collected thereon the money is but particularizing with certainty the manner and means by which he became intrusted with the money; the charge that he embezzled the certificates is simply a charge that by receiving and embezzling the money he converted the

certificates—probably a *non sequitur*—but nevertheless is not a distinct charge of embezzling the certificates, and a distinct charge of embezzling the money.   As before stated, the indictment itself negatives the possibility of a conversion of the certificates independent of embezzling the money, for he collected the money upon them, and as we say, surrendered the certificates; but whether the indictment warrants the inference of surrender of the certificates or not, had he turned over the money as by the terms of his trust he should have done, he could never have converted the certificates of Lucy J. Hill. The indictment states no public offense so far as the certificates. are concerned, and therefore it is as if nothing had been said on that subject.

If there are two offenses charged, a conviction of the one would be no bar to a prosecution of the other; and suppose the grand jury had added in its indictment, "that said defendant has heretofore been convicted for the embezzlement of said money," what could this court say, except that defendant has been punished for the only offense which under the entire transaction pleaded he had been guilty of ?

It clearly appears that the money obtained on the certificates is the same money embezzled.   The matter becomes one entire transaction, and any number of allegations of legal conclusions, viz., that he converted the certificates, can not add to or enlarge the legal conclusion from the facts pleaded.   See, as illustrations of single offense charged, Wharton's Crim. Law, 141; *People* v. *Shotwell,* 27 Cal. 399; *People* v. *Frank,* 28 Id. 507; *People* v. *De La Guerra,* 31 Id. 459; *People* v. *Burgess,* 35 Id. 115; *People* v. *Ah Own,* 39 Id. 604; *People* v. *O'Neil,* 47 Id. 186.

But take the indictment literally, construe its language as defendant's counsel would make it read, and it but charges a distinct act of embezzlement, at a stated time, of different kinds of property received from different sources and in different ways.

The mere fact that a collector receives as agent from various sources and in various ways different kinds of property, and embezzles the whole, does not make him guilty of as many offenses as there are kinds of property received from different sources.

The order of the court below sustaining the demurrer should be reversed, with instructions to overrule the demurrer, with leave to the defendant to plead to the indictment: Prac. Act, 1878, sec. 365 ; *People* v. *De La Guerra*, 31 Cal. 461 ; *People* v. *Ah Own*, 39 Id. 608.

*Sutherland & McBride*, for the defendant.

The judgment on the demurrer should be affirmed. It is a fundamental right of all persons accused of crime to have the charge stated with particularity in the indictment. The legislature has not the power to dispense with such particularity: Amend. to Const., art. 6, sec. 1; *Connor* v. *Commonwealth*, 13 Bush, 720 ; *McLaughlin* v. *State*, 45 Ind. 338 ; 1 Am. Cr. L., sec. 299; *State* v. *Learned*, 47 Me. 432; *Brown* v. *People*, 29 Mich. 234; *People* v. *Olmstead*, 30 Id. 438.

" The discussions on this subject sometimes lose sight of the principle that the rules requiring information to be given of the nature of the accusation are made on the theory that an innocent man may be indicted as well as a guilty one, and that an innocent man will not be able to prepare for that without knowing what he is to meet on the trial. And the law not only presumes innocence, but it would do gross injustice unless it framed rules to protect the innocent:" Per Campbell, J.

This particularity must be such as to enable the defendant as well as the court to identify the transaction involved and the precise offense intended to be charged: *State* v. *Stensor*, 24 N. J. L. 25; *Lambert* v. *People*, 9 Cow. 586; *People* v. *Allen*, 5 Denio, 79; *People* v. *Williams*, 35 Cal. 672; 1 Am. Cr. L., secs. 285, 287, 288, 289; *United States* v. *Cruikshank*, 92 U. S. 558 ; *McFain* v. *State*, 41 Tex. 388; *Schmidt* v. *State*, 78 Ind. 41; *Bates* v. *State*, 31 Md. 72; 1 Bish. Cr. Proc., secs. 621, 626, 628; *The Mary Ann*, 8 Wheat. 380, 389; *United States* v. *Pond*, 2 Cart. 265; *Lamberton* v. *State*, 11 Ohio, 282.

The offense must thus be made judicially to appear: 1 Am. Cr. L., sec. 285; *United States* v. *Cruikshank*, 92 U. S. 558; *Enden* v. *People*, 20 Mich. 233.

The statement of the acts or omissions constituting the offense must be technically exact: 1 Am. Cr. L., sec. 287 ; Cr. Prac. Act, 1878, sec. 150; *Schmidt* v. *State, supra; State* v. *Gibbons*, 2 N. J. L. 45. This can not be done by stating a

mere legal conclusion: 1 Am. Cr. L., sec. 288; *Commonwealth* v. *Smart,* 6 Gray, 15.

The criminal practice act provides that the sufficiency of pleadings shall be determined by rules prescribed in that act: Sec. 148.

Section 150 prescribes what an indictment "must" contain: among other things, "a clear and concise statement of the acts or omissions constituting the offense with such particularity of the time, place, person, and property as will enable the defendant to understand distinctly [without blending one thing with another—Webster], the character of the offense complained of. "

Section 151 requires that it be direct and certain as to the party charged, the offense charged, and the particular circumstances of the offense.

Hence there is required, not only a clear and concise statement of the acts or omissions constituting the offense, but also a direct and certain disclosure of the facts and circumstances: *People* v. *Myers,* 20 Cal. 76.

It is often stated as a general rule, that a statutory offense may be charged in the language of the statute. This is not true literally in any case. No indictment would be held good which alleged the commission of an offense only in that general way. The particulars mentioned in section 150 were always required.

Where the words of a statute are descriptive of the offense, the indictment should follow its language, and charge the described offense on the defendant: 1 Am. Cr. L., sec. 364; *State* v. *Gibbons,* 2 N. J. L. 51; *People* v. *Allen,* 5 Denio, 76. It is necessary that the defendant should be brought within all the material words of the statute; and nothing can be taken by intendment: Id.; Arch. Cr. Pr. 86, note; *Koster* v. *People,* 8 Mich. 431; *Commonwealth* v. *Williams,* 3 Gray, 461. When a statute defines the crime by general or generic terms, the indictment must state particulars: *United States* v. *Cruikshank,* 92 U. S. 558; *Commonwealth* v. *Smart,* 6 Gray, 15; 1 Am. Cr. L., sec. 365.

So when a general word is used in a statute in a narrow or restricted sense, the statement of the case must be brought within the statute construed in this restricted sense: *Bates* v.

*State,* 31 Ind. 72; *Schmidt* v. *State,* 78 Id. 41; *Commonwealth* v. *Slack,* 19 Pick. 304; *Commonwealth* v. *Bean,* 11 Cush. 414; *Commonwealth* v. *Stout,* 7 B. Mon. 249.

If the offense can only be committed by a person standing in a particular relation, or having a particular office or situation, the indictment must allege that the defendant stood in that relation, or had that office or situation: *People* v. *Allen,* 5 Denio, 79; *Ex parte Hedley,* 31 Cal. 108; *Commonwealth* v. *Libbey,* 11 Met. 621; *King* v. *John,* 3 Mau. & Sel. 548.

Section 2221 to 2125 of the compiled laws subdivide the offense of embezzlement, which is defined generally in section 2120: Comp. L. 628. They state different conditions under which the offense may be committed. The object is obvious: it is not to adjust punishment to varying cases; the punishment is the same for all the classes. The purpose is manifestly to require a more precise statement of the case in the indictment. Each section defines a distinguishable offense of embezzlement. Every indictment for that offense must be correspondingly precise.

These sections severally mention a special character or capacity of the person whose conversion of the property intrusted to him is declared to be embezzlement. The indictment must make it appear that the accused had the requisite character or capacity, as part of the "particular circumstances;" and also that the intrusting was appropriate thereto, according to the definition of the offense in some one of the sections.

This indictment alleges that the intrusting was to the defendant as a "bailee." That is a distinctive capacity mentioned in defining the crime, in section 2124. A bailee in terms is not mentioned in either of the other sections; but other more precise words are used in connection with the intrusting to signify the capacity. Therefore the indictment must be deemed founded on that section. It must be sustained as sufficient on that section.

A conviction or acquittal on this indictment would not avail the defendant as a bar to a prosecution under either of the other sections. "A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentences upon another, unless the evidence required to support an in-

dictment upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if the statute requires proof of an additional fact, which the other does not, an acquittal does not exempt the defendant from prosecution and punishment under the other:" *Morey* v. *Commonwealth,* 108 Mass. 434; *Commonwealth* v. *Robey,* 12 Pick. 503; Wells' Res Adjudicata, sec. 414; *Price* v. *State,* 19 Ohio, 424; 8 Am. Cr. L., sec. 565; *Commonwealth* v. *Tenney,* 97 Mass. 50; *Commonwealth* v. *Simpson,* 9 Met. 138. The plea is good if it appear that an acquittal on one would show that the defendant could not be guilty on the other indictment: *State* v. *Cooper,* 13 N. J. L. 371.

1. The indictment is defective, by reference to that section, because it does not state facts with such particularity that the court can judicially perceive that that particular offense has been committed.

The elements of the offense are the intrusting to the defendant as bailee and the fraudulent conversion.

A minor objection is that no time or place is stated as to the intrusting. This omission is a plain departure from the requirement of section 150 of the criminal practice act.

There is a more serious objection to the failure to state the purpose for which the certificates of deposit were intrusted to the defendant. The delivery of the certificates to him was for some purpose, and that purpose was part of the fact of delivery; it fixes the character in which the certificates were received, and the resulting duty and rights.

The charge of subsequent fraudulent conversion depends on the object of that delivery. There is nothing but the pleader's word for either bailment or fraudulent conversion. In the absence of a statement of the particular circumstances, there is nothing for the judicial mind to consider, and sections 150 and 151 have not been complied with: *Commonwealth* v. *Smart,* 6 Gray, 15; *People* v. *Cohen,* 8 Cal. 42; 2 Russell on Crimes, 195; *Commonwealth* v. *Doherty,* 127 Mass. 20; *People* v. *Williams,* 35 Cal. 672; *Commonwealth* v. *O'Keef,* 121 Mass. 59; *State* v. *Haskell,* 33 Me. 127; *People* v. *Gregory,* 30 Mich.

371; *United States* v. *Winston,* 3 Saw. 337; *State* v. *Day,* 74
Me. 220; 1 Bish. Cr. Proc., sec. 386; *Swinson* v. *Schwartz,* 22
Cal. 229; see *Devine* v. *State,* 4 Ind. 240; *Snyder* v. *State,* 5
Id. 194; *State* v. *Miles,* 5 Id. 577; *Hubbard* v. *State,* 11 Id.
554.

Fraud is the gist of this offense, owing to the confidence
reposed in the intrusting. Without stating what that confi-
dence was, there is a general statement of a fraudulent con-
version. It is only a fraudulent conversion of property by a
bailee that is punishable as a crime. Therefore the fraud is
the material element; but contrary to principle and precedent,
the facts constituting it are not stated: *United States* v. *Sim-
mons,* 96 U. S. 360; *Commonwealth* v. *Hays,* 14 Gray, 62;
*United States* v. *Gogging,* 9 Biss. 269; *State* v. *Jackson,* 39
Conn. 229; *State* v. *Parker,* 43 N. H. 83; *Alderman* v. *People,*
4 Mich. 414; *Commonwealth* v. *Strain,* 10 Met. 521.

The facts accompanying the delivery of the certificates not
being stated, there is not a clear and concise statement of the
offense; nor is the defendant able to understand distinctly
the character of the charge. The particular circumstances of
the offense are not stated. The offense is not made judicially
to appear. It is not stated with technical exactness. It is
stated only by a legal conclusion.

If the transaction had been fully and accurately set out, it
might appear that the purpose for which the certificates were
put in the defendant's possession authorized him to collect
and retain the money, as was remarked by the court in
*Commonwealth* v. *Smart,* 6 Gray, 17. The purpose of the
delivery of the certificates to the defendant is a fact of vital
importance. That fact, with the delivery of the certificates,
was probably the only actual transaction between Mr. Hill
and the defendant. All the allegations as to what was done
afterwards, and as to the legal quality of such acts, are made
with reference to the assumed purport of that transaction as
a legal conclusion.

2. It is evident from the facts stated that the certificates
were not intrusted to the defendant as a bailee. They are
described as payable to the order of Lucy J. Hill, and it is
averred that the defendant collected them, and the proceeds
are alleged to be her property. These averments necessarily

imply that Mrs. Hill indorsed the certificates to the defendant. Thereby she transferred the title to him—made him the legal holder and owner. Being indorsee, he was entitled to collect and receive the money from the bank. He could have sued in his own name to recover it. He was as much the legal holder and owner of the money as of the paper on which he received it. The rights of Lucy J. Hill afterwards, that is, after parting with the certificates indorsed, depended wholly on the agreement made at the time she parted with them. But an intrusting of the certificates to him by an indorsement could not make him a "bailee" within the sense of section 2124.

No person is a bailee within the meaning of that section by receiving the title to choses in action in any capacity mentioned in the preceding section. If the defendant received the indorsed certificates merely to keep for the indorser, he was a trustee. If, besides being clothed with the legal title, he was directed to do something actively with the certificates, as to collect them, or to use in any manner the proceeds, he might still be a trustee, collector, and agent, or a debtor. If he was to hold them, or to collect, hold, or use the proceeds for her, he was one of the persons mentioned in the preceding section; but no facts are stated to show whether he was indorsee for any purpose which concerned her or not. The indictment would be equally defective if it had stated an intrusting to him as trustee, agent, or collector.

3. The indictment alleges two offenses. This objection does not imply that either offense is stated according to sections 150 and 151 of the criminal practice act. In such manner as the pleader thought proper to allege them, he has charged two offenses: one for the fraudulent conversion of two certificates intrusted to the defendant by Mrs. Hill; and the other for the fraudulent conversion of nine thousand dollars in money intrusted to him by her and the Deseret National Bank. One offense relates to certificates intrusted by one person at an unstated time; and the other to money intrusted by two persons March 8, 1883: *People* v. *Connor*, 17 Cal. 361.

In the appellant's brief it is stated that the indictment charges only embezzlement of the money; that the word "same"

in the allegation of the conversion refers only to money; or if construed to refer to the certificates, it is so repugnant to the other allegation that the latter should be taken as true and the former false. This is a new application of the doctrine of natural selection and survival of the fittest. It is a double-headed indictment, and the pleader can not maintain it as single by a mere assertion that in a collision one head has been knocked off.

The contention that the word "same" refers only or at all to money in the allegation of conversion is sufficiently answered by a reading of that part of the indictment: "Said Alexander S. Hill being so as aforesaid intrusted as bailee with said certificates and said money to said amount of nine thousand dollars, the property of the said Lucy J. Hill, afterwards, on the twelfth day of March, 1883, at said county of Salt Lake, fraudulently and feloniously did convert the same and the proceeds thereof to his own use."

The illustrative supposition of appellant's counsel to get rid of one offense as a redundancy is equally abortive. The certificates are not "a horse which had not before been referred to;" nor are we to have our objection of two offenses tested by supposing the certificates had not before been referred to. That argument disposes of the objection by starting with the postulate that it does not exist.

It only remains to answer the principal argument of the appellants that the demurrer does not distinctly specify the grounds, and therefore, according to the statute, should have been disregarded.

This appeal by the people is not from a refusal of the district court to disregard the demurrer. It does not appear that the court below was asked to disregard it. The demurrer was heard; the people participated in the hearing, and the demurrer was allowed. No question of its sufficiency to be heard as a demurrer was raised in the court below, when it was in the power of the defendant to make it more specific, if necessary. No such question comes up on the record. The court below having sustained the demurrer, it is now almost a sarcasm to suggest that no grounds were distinctly specified.

To disregard a demurrer is not to hear it—not to deal with it as a demurrer. If, as this case shows, it was heard as a de-

murrer, without objection on the part of the people, they waived the objection, and can not now complain.

The requirement is for the benefit of the party whose pleading is demurred to. If he does not see fit to claim that benefit, he may, and thereby does, waive it. If the court perceives the ground on the argument, and allows the demurrer, the demurring party is entitled to judgment. That is the defendant's vantage-ground in this case. The people have appealed from the judgment, and the question now is, as it was in the court below, whether the indictment is sufficient in view of the objections as they are stated in the demurrer.

The objection that the demurrer does not distinctly specify the grounds is not well taken. The demurrer does distinctly specify the grounds. In addition to specifying the grounds as they are stated in the statute, it is stated that the indictment fails substantially to conform to sections 150 and 151 " as to the offense charged, and the particular circumstances:" See *State* v. *Ah Sam,* 7 Nev. 127.

In the statutory specification of the grounds of demurrer in section 192 of the criminal practice act there is a wrong reference. Section 152 is referred to instead of section 151. The error is easily corrected, and may be corrected by construction: *People* v. *King,* 28 Cal. 273; *Ex parte Hedley,* 31 Id. 114.

II. The order refusing to discharge the defendant after judgment on the demurrer should be reversed, and the defendant discharged.

1. Under the circumstances, the defendant had a right to be discharged as the necessary result of the allowance of the demurrer: Crim. Prac. Act, sec. 196; *State* v. *Comfort,* 22 Minn. 272. The grand jury which found the indictment, and the next succeeding grand jury, having been discharged when the demurrer was allowed, the judgment on the demurrer was final, and a bar to any other indictment for the same offense: Id.

The district court had no jurisdiction to modify that effect of the judgment, after it had become impossible to resubmit the case according to section 196. The case being in such a predicament that it could not be resubmitted to either grand

jury mentioned in that section, the judgment was an absolute finality.

Under section 197 the defendant was entitled to be discharged when the case could not be resubmitted; for in such a case, no power to make an order of resubmission existed. The order made was void, and only equal to no order.

Even if this court should reverse the decision on the demurrer, the defendant would, nevertheless, be entitled to his discharge. Such reversal would not validate a void order.

An appeal by the people does not stay the proceedings. The defendant's right to be discharged attached immediately on the allowance of the demurrer; and had he been set at liberty, there is no provision for again arresting him. No appeal would lie on behalf of the people to reverse that order of discharge, for it was peremptorily directed by the statute, and could not be alleged to be erroneous.

What could not be done by regular proceedings can not be done by proceedings which are irregular and wholly without authority.

2. If the district court had jurisdiction to consider the question of a resubmission of the case, such facts existed as made the order for the defendant's detention erroneous.

*a.* The objections to the indictment could not be avoided in a new indictment.

The power to resubmit is to be exercised with a view to another indictment for the same offense, for it is a step authorized merely to qualify the effect of a judgment which would otherwise be a bar to that effect. His discharge would not affect the right of the people to prosecute for another offense; but there is nothing in section 196 which can be construed as authority to detain the defendant to answer another indictment for a different offense.

The points made against the indictment rendered it obvious that no new indictment for the same offense, that is, under section 2124, could be framed and not be found liable to the same objections which were found inseparable to this. The facts stated in the present indictment showed that the defendant was not chargeable as a bailee.

*b.* Leave was granted absolutely to renew the motion for discharge after the first motion had been denied, and then it

appeared that no offense had been committed, and also that defendant had been extradited, and was not liable to arrest for any other offense: *Sanford* v. *Chase*, 3 Cow. 381; *Hudesor* v. *Prizr*, 9 Phill. 65; *Norris* v. *Beach*, 2 Johns. 294; *Williams* v. *Reed*, 29 N. J. L. 385; *Dangan* v. *Millar*, 37 Id. 183; *Nason* v. *Estee*, 2 R. I. 237; *Woods* v. *Woods*, 78 Ky. 624; *Blair* v. *Turtle*, 1 McCrary, 373; *Re Cannon*, 47 Mich. 481; *Commonmealth* v. *Hawes*, 13 Bush, 697.

The order allowing the demurrer contains the refusal to discharge, and the order to detain him for a resubmission of the case.   Thus court can modify that order so as to discharge the defendant.

EMERSON, J.:

The defendant was arraigned in the third district court upon an indictment for embezzlement, the charging part of which is as follows: "The said Alexander S. Hill, on the eighth day of March, A. D. 1883, at the county of Salt Lake, in said territory of Utah, having been intrusted as bailee by one Lucy J. Hill with two certificates of deposit of money in the Deseret National Bank, to wit, one for the sum of five thousand dollars and the other for the sum of four thousand dollars, both payable to the order of, and both being the property of, said Lucy J. Hill, did collect and receive thereon and therefor from said bank, and as bailee was by said bank and said Lucy J. Hill intrusted to carry and convey from said bank to said Lucy J. Hill, within said county, money to the amount and value of nine thousand dollars, proceeds of said two certificates, an exact description of which is to the jury unknown; and said Alexander S. Hill, being so as aforesaid intrusted as bailee with said certificates and said money, to said amount of nine thousand dollars, the property of said Lucy S. Hill, afterwards, on the twelfth day of March, 1883, at said county of Salt Lake, fraudulently and feloniously did convert the same and the proceeds thereof to his own use, contrary," etc.

To this indictment the defendant interposed a demurrer, upon the following grounds:

"1. On the ground that said indictment does not substantially conform to the requirements of sections 150 and 151 of

the code of procedure in criminal cases, as to the offense charged and the particular circumstances.

" 2. That more than one offense is charged in the said indictment."

The demurrer was sustained, to which ruling the prosecution excepted. Thereupon the counsel for the defendant moved for an order discharging the defendant from custody, and the prosecution moved "for an order of resubmission to the grand jury, as provided by statute." The defendant's motion was denied, and that of the prosecution granted; whereupon the following order was entered: "And it is further ordered and adjudged by the court that the case be resubmitted to the grand jury of this court, at the next sitting thereof, for further consideration and action by such grand jury, and that in the mean time the said Alexander S. Hill be and remain in the custody of the United States marshal." To all of which the defendant duly excepted.

I have been thus particular in reciting the order made subsequent to that sustaining the demurrer, to demonstrate that the right of the prosecution to prosecute this appeal is in accordance with the doctrine laid down in the dissenting opinion in the case of *People* v. *Ah Own,* 39 Cal. 608, which, in my opinion, is a correct interpretation of the statute; our statute upon that subject being a literal copy of that of California.

The people appeal from the judgment sustaining the demurrer.

Section 192 of the criminal practice act points out what objections appearing upon the face of the indictment may be taken advantage of by way of demurrer. The defendant selects subdivisions 2 and 3 of that section with which to assail this indictment, and they are as follows: "2. That it does not substantially conform to the requirements of sections 150 and 152. 3. That more than one offense is charged in the indictment."

Section 150 prescribes what the indictment must contain, viz.: "1. The title of the action specifying the name of the court to which the indictment is presented, and the names of the parties; 2. A clear and concise statement of the acts or omissions constituting the offense, with such particulars of

the time, place, person, and property as will enable the defendant to understand distinctly the character of the offense complained of and answer the indictment;" and then gives a form for an indictment which must be substantially followed.

Section 151: "It must be direct and certain as it regards: 1. The party charged; 2. The offense charged; 3. The particular circumstances of the offense."

Section 152 prescribes what shall be done when a defendant is indicted by a fictitious or an erroneous name, upon the discovery of his true name.

The reference to section 152 in subdivision 2 of section 192 is manifestly a mistake, and does not express the legislative intent. Considering the subject-matter of which they are treating, that intent can only find expression in section 151.

This statute being for the protection of the individual, it should not receive such a construction as would deprive him of any right. The intention of the legislature to give a defendant in a criminal prosecution the right to demur to an indictment for any or all the reasons mentioned in section 151, appearing on the face thereof, is manifest; and it is our duty to carry this intention into effect, and so control the words used as to make them refer to the section evidently intended.

Subdivision 2 of section 192 will be read as though the reference were to section 151 instead of 152. Any other construction would lead to an absurdity, and should be rejected. In the construction of a statute, if the meaning of the legislature is manifest, the intention will be carried into effect, although apt words are not used in the act: *Crocker* v. *Crane,* 21 Wend. 211. And this rule ought and does go to the extent of correcting errors and mistakes which are clear and obvious, and without which correction no effect could be given to the statute: *People* v. *King,* 28 Cal. 274; *Ex parte Hedley,* 31 Id. 114.

The prosecution contends that the demurrer does not sufficiently specify the objections to the indictment to meet the requirements of section 193 of the criminal practice act. That section provides that "the demurrer must be in writing, signed either by the defendant or his counsel, and filed. It

must distinctly specify the grounds of objection to the indictment, or it must be disregarded."

The objection raised by the first ground of the demurrer is that the indictment does not substantially conform to the requirements of sections 150 and 151, and under this allegation specifies that two of the direct and certain essentials mentioned in section 151 are not found in this indictment, viz., subdivisions 2 and 3, as to the offense charged and the particular circumstances. This is a sufficient specification of the grounds of the objection, and satisfies the mandate of section 193.

Having disposed of these preliminary matters, we come to the questions raised by the demurrer. By a reference to the first ground upon which the indictment is assailed, it will be sure that the specific objections raised by the demurrer are, that the requirements of subdivisions 2 and 3 of section 151 are not met and complied with. Although section 150 is referred to in the demurrer, yet, as the specification of the grounds of the objection required by section 193 does not refer to any of the requisites contained in 150, it can not be regarded as attacking the indictment for want of conformity to any of the requirements of the latter section, except so far as the provisions of subdivision 2 of this section are inseparably connected with those of subdivision 3 of section 151; all others are deemed to be waived by reason of the failure to specifically point them out.

The objection that an indictment does not substantially comply with the requirements of sections 150 and 151, either one or both, must be taken by special demurrer, specifically pointing out by apt and proper words what conditions of the various subdivision of those sections have been violated. It will not do to demur in the language of subdivision 2 of section 192, and stop with that. The precise grounds must be pointed out: *People* v. *Feilen*, 58 Cal. 218.

There is no room for doubt as to the offense sought to be charged upon the defendant. If the indictment is sufficient to charge any offense, it is that of embezzlement, and can be none other. The language used and circumstances averred are applicable to no other offense. So that if it substantially conforms to the requirements of section 151, or to the par-

ticular circumstances, the indictment, so far at least as the objections aimed at by this demurrer are concerned, sufficiently charges the crime of embezzlement.

Its sufficiency is to be tested, not by the rules of the common law, but by the requirements of the criminal practice act.

Section 158 of that act declares that the indictment is sufficient if it can be understood therefrom, among other things not called in question here, " that the act or omission charged as the offense is clearly and distinctly set forth without repetition, and in such a manner as to enable the court to understand what is intended ; and to pronounce judgment upon conviction, according to the right of the case."

It is sufficient if the charge be stated with so much certainty that the defendant may know what he is called upon to answer, and the court how to render judgment. In other words, substantial justice should be more sought after than artificial nicety.

The defendant, whether he be guilty or innocent, if he understands the English language, can not fail to have understood, when the indictment was read to him, that by it he is charged with the embezzlement of nine thousand dollars, the property of Lucy J. Hill.

Even under the above liberal rule, laid down by the legislature as our guide in determining its sufficiency, it is the duty of the prosecution to so frame every indictment as to apprise the defendant with a reasonable degree of certainty of the character of the charge preferred against him. The absence of a direct allegation of anything essential in the description of the substance, character, or manner of the crime can not be supplied by intendment. It is as much an essential requisite under our criminal practice act as it ever was, that all matter material to constitute the particular crime charged should be alleged with such positiveness and distinctness as not to need the aid of intendment or implication. All this is embraced in the fundamental declaration that it is the right of every person accused of a crime " to be informed of the nature and cause of the accusation." These rules do not require any hypercritical construction and interpretation of an indictment on the part of the court. All that is required is a fair and rea-

sonable construction and interpretation, that substantial justice may be meted out and society protected. While the court must not lose sight of the rule that every defendant in a criminal prosecution is to be deemed innocent until the contrary is proved, it ought not to blind itself against the equally sacred right of the peaceable and law-abiding portion of the community to be protected from those who are criminally inclined. The straining of this rule in favor of persons charged with crime is bringing the administration of the laws against crime in this country into disgrace. It is having this effect upon the common, ordinary mind in nearly all communities; and as a result, we are frequently reminded that wronged human nature is seeking to right itself in acts of violence which are a disgrace and reproach to the enlightenment of the age. Courts should do their part towards correcting this state of things, and while obeying the fair construction of the rules of law, as well as the dictates of an enlightened humanity, in sacredly guarding the rights of every person accused of crime when brought before them, they should be equally careful that the legal rights and moral sense of the community receive no detriment through constant familiarity with immunity of crime, by demanding artificial nicety rather than substantial plainness in every step taken by those charged with the prosecution of criminal offenses.

It is claimed by the defendant that this indictment does not meet and satisfy the rules above referred to, and mainly because it is charged that he was "intrusted as bailee" with the property, without setting out the particular circumstances of the bailment.

It is doubtless true that the prosecution sought to charge the defendant under section 2124 of the compiled laws, which enacts that "every person intrusted with any property as bailee, * * * who fraudulently converts the same or the proceeds thereof to his own use, or secretes it or them with a fraudulent intent to convert to his use, is guilty of embezzlement."

I can see no reason why it is not sufficient to charge the offense in the language of the statute, or what difference it can possibly make to the defendant in an indictment for

embezzlement, as bailee, whether the bailment was to keep, to transport, to deliver, or to dispose of. The essential thing in and a concise definition of the crime of embezzlement is the fraudulent appropriation of another's personal property by one to whom it had been intrusted. If it should turn out upon the trial that the person charged with embezzlement had the right to appropriate the property to his own use, then, no matter what the character of the original bailment, it would be a complete defense, the same as if, in a trial on an indictment for larceny, the goods charged to have been stolen should turn out to be the property of the defendant instead of owned by the person alleged. It has never been held that it was necessary to allege how a person became owner.

Mr. Bishop, in his work on statutory crimes, section 421, gives the form of the charging part of an indictment for embezzlement by a bailee, which he insists is sufficient, and which is as follows: "That J. S., etc., on, etc., at, etc., being then and there the bailee of one gold watch, of the value, etc., of the goods and chattels, etc., did fraudulently and feloniously convert," etc.

In the following section (422) the learned author, commenting upon the case of *People* v. *Poggi*, 19 Cal. 600, which reviews the case of *People* v. *Cohen*, 8 Id. 42, relied upon by the defendant in this case, uses the following language: "The court of this state [California], however, has gone further, and, contrary to the foregoing views, has held that it is not enough to charge the defendant, as in the foregoing form, with being bailee, but the facts and circumstances of the bailment must be set out. To the writer, this does not seem, on principle, to be necessary, for the following reasons: first, although the fact of the bailment is material, it is in a certain sense incidental; the offense consisting in the person who sustains the relation of bailee to the property doing the forbidden thing. The *gravamen* of the charge is, that this person did 'convert the same to his own use.' It is not denied, and it can not be, that it is sufficient simply to follow the statute in this part of the allegation; therefore, *a fortiori*, it should be sufficient in the other part. Secondly, the relation of bailee is well known in the law; just as well

known, though not quite so common, as the relation of owner. It is not necessary to allege how a man became owner of personal property, or to state the facts and circumstances of the ownership. When one is charged with being owner, the allegation covers all necessary facts; in like manner, it should be held that, when one is charged with being bailee, the allegation covers all necessary facts."

The allegation in this indictment that the nine thousand dollars was the property of Lucy J. Hill is just as material an allegation as the one that he was "intrusted as bailee." Nothing more is left to be supplied by intendment and implication in the one case than in the other. The fact is, that nothing is left to be so supplied in either. Each must be regarded as the allegation of an ultimate fact.

It has frequently been held that an indictment for embezzlement which charged that the defendant was the agent of the person whose property was charged to have been embezzled, and that he received it as agent, was sufficient, without setting out in detail the nature and purpose of the agency. It is not perceived why a different rule should apply to "bailee" than to "agent." One is no less a generic term than the other. The case of *Commonwealth* v. *Smart*, 6 Gray, 15, so confidently relied upon, is not in point, because in that case the indictment undertook to set out the particular terms under which the property was intrusted to the defendant; and as the court say, there was evidently an omission of a whole clause which was necessary to determine the relation which the defendant bore to the prosecutor in reference to the property. The court were left entirely to conjecture as to what words were intended to be inserted. It is noticeable, moreover, that this case is not referred to by Mr. Bishop, although a decision from his own state, in his review of the subject now under discussion. The demurrer should not have been sustained upon this ground.

The second ground upon which the indictment is assailed by the demurrer is "that more than one offense is charged."

This result is supposed to follow from the allegation that the defendant was intrusted as bailee with the two certificates of deposit. After reciting the fact that the money was collected on them, and was intrusted to him as bailee by the

bank and said Lucy J. Hill, to carry from the bank to her, it proceeds : " Being so as aforesaid intrusted as bailee with said certificates and said money, to said amount of nine thousand dollars, the property of said Lucy J. Hill, afterwards, on the twelfth day of March, 1883, at said county of Salt Lake, fraudulently and feloniously did convert the same and the proceeds thereof to his own use," etc.

The only substantive offense charged in the indictment is the embezzlement of the money. All the acts alleged are parts of one and the same transaction, which resulted in the commission of one offense, and that the embezzlement of the money. This is sufficiently made to appear in the indictment. The averments concerning the certificates do not constitute an embezzlement of them : they negative that idea.

. The reference to the certificates in connection with the charge of the embezzlement of the money is surplusage.

The indictment is not bad for duplicity under section 153 of the criminal practice act.

The demurrer should have been overruled on both grounds.

The defendant appeals from the order of the court below, refusing to discharge him upon sustaining the demurrer. The record shows that the court, upon the motion of the prosecution, ordered the case to be resubmitted to the grand jury which should next meet after the order was made. I am satisfied that neither of these is an appealable order. The order refusing to discharge is in substance the order resubmitting the case, which immediately followed it, and was right and proper if the order of resubmission was right and proper. It has been ruled, and no doubt correctly, that the statute does not give the defendant the right to appeal from such an order, and that it can only be reviewed on an appeal from the final judgment.

Subdivision 3 of section 360, which allows a defendant to appeal " from an order made after judgment affecting the substantial right of the party," applies only to orders made after final judgment, which of course could not be reviewed on an appeal from the judgment: *People* v. *Clark,* 42 Cal. 622.

This point was not raised on the appeal; it ought not, however, on that account, to be passed over in silence, and this appeal allowed to become a precedent for others from like orders.

It is understood that the prosecution as well as the defendant desire a construction of section 196, under the provisions of which the order appealed from was made.

•The section referred to enacts : " If the demurrer is allowed, the judgment is final upon the indictment demurred to, and is a bar to another prosecution for the same offense, unless the court, being of the opinion that the objection on which the demurrer is allowed may be avoided in a new indictment, directs the same to be resubmitted to the same or to the next succeeding grand jury."

It will be seen by the record that the defendant was indicted on the fourteenth day of April, 1883; was arraigned, and filed his demurrer on the seventeenth day of May following. For some reason, presumably satisfactory to all parties concerned, the argument on the demurrer was postponed until the sixth day of October, when it was argued and submitted, taken under advisement, and finally disposed of on the tenth day of December, 1883. So that at the time the demurrer was allowed, the grand jury, which found the indictment and the next succeeding one to that had been discharged. For this reason, the defendant insists that the order of resubmission was erroneous, and consequently the order refusing to discharge the defendant was erroneous.

In our opinion, the words "next succeeding grand jury" refer back to the time when the judgment on the demurrer is made and entered, and the meaning is, that if the order of resubmission is made, it must be to the first grand jury that meets after the demurrer is allowed. This view is strengthened by the reference made in section 198, which provides that "if the court directs that the case be resubmitted, the same proceedings must be had thereon as are prescribed in sections 187 and 188." These sections refer to the proceedings on a motion to set aside the indictment, and section 187 provides, among other things: "If the motion is granted, the court must order that the defendant, if in custody, be discharged therefrom; or if admitted to bail, that his bail be exonerated; or, if he has deposited money instead of bail, that the same be refunded to him, unless it directs that the case be resubmitted to the same or another grand jury.

If the construction contended for by the defendant should

prevail, then in every case of a defective indictment, it would only be necessary for the defendant to avoid arrest, or get the hearing and decision upon a demurrer postponed until after the discharge of the grand jury next succeeding the one which found the indictment, and he has placed as effectual a bar to any further prosecution for that offense as a trial and verdict would be.

We do not think this was the intention of the legislature, nor do we think the language used demands that we should so interpret it.   Construing the sections referred to together, we think the plain intent is, that in case the court should, for reasons satisfactory to itself, deem it advisable to resubmit a case to a grand jury, it should improve the first opportunity presented to do so, and not keep a defendant in custody or on bail for an indefinite length of time.

There is no absolute rule of construction that compels us to refer the clause "next succeeding grand jury," in section 196, to the nearest word that might be an antecedent.   The relative may be referred to such antecedent as will give the clause a sensible and reasonable construction: 10 Mée. & W. 728.

The judgment of the court below in sustaining the demurrer is reversed, and the cause is remanded to the third district court, with directions to that court to overrule the demurrer, and allow the defendant to plead to the indictment.

The order of the court below in refusing to discharge the defendant is affirmed.

TWISS, J., concurred.

HUNTER, C. J., dissented from the judgment of reversal, and concurred in the judgment affirming the order of the court below.